UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: ____________
DATE FILED: 3/29/2022

MICHAEL BLOCK, ATTORNEY AT LAW,

Plaintiff,

-against-

HARTFORD UNDERWRITERS INSURANCE COMPANY,

Defendant.

20-cv-9302 (ALC)

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

This case arises from the denial of insurance coverage stemming from COVID-19 business closures. Plaintiff Michael Block, Attorney at Law ("Block") alleges that Defendant Hartford Underwriters Insurance Company's ("HUIC") denial of coverage was a breach of contract.

On December 17, 2019, Plaintiff, a law office located in lower Manhattan purchased a one year "all-risk" insurance policy ("Policy") from HUIC.[1] Section A.1, the Special Property Coverage Form, of the Policy includes three provisions: Business Income, Business Income from Dependent Properties, Extra Expense, and Civil Authority. The Policy defines Business Income as:

> (i) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no direct physical loss or direct physical damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and
> (ii) Continuing normal operating expenses incurred, including payroll expenses.

ECF No. 30-1 at 135. Each of the provisions at issue — Business Income, Extra Expenses, Business Income for Dependent Properties, Civil Authority Actions — uses this definition for

[1] These facts are taken from the Second Amended Complaint and assumed to be true for purposes of this motion.

business income. *See id.* at 76–78, 82 –83, 135 –38.

Extra Expenses are defined as expenses incurred "during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or direct physical damage to property at the 'scheduled premises.'" *Id.* at 137. Plaintiff also brings claims under the "Business Income for Dependent Properties" provisions, which uses substantially the same definition of Business Income. The Business Income for Civil Authority Actions provides:

> When a Covered Cause of Loss causes direct physical loss or direct physical damage to property other than at the "scheduled premises", we will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur during the "civil authority period of restoration" caused by action of civil authority that prohibits access to the "scheduled premises" provided that both of the following apply:

*Id.* at 82 –83.

In March 2020, then-Governor Cuomo issued an executive order limiting the movement around New York state to curb the spread of the COVID-19 virus. The order limited operations for all non-essential businesses. Plaintiff alleges that this order impeded their operations because they were not allowed access to their physical offices. Plaintiff also alleges the closures of the state courts severely affected the business. In May 2020, Plaintiff submitted a notice of claim to HUIC, seeking coverage of losses sustained from the curbing of business operations. HUIC denied his claim.

On September 16, 2020, Plaintiff filed this action in New York State Supreme Court. Defendant removed the case to federal Court on November 5, 2020. Plaintiff filed amended complaints on December 4, 2020 and March 12, 2021. On April 27, 2021, HUIC moved to dismiss the Second Amended Complaint.

Defendant brings this motion to dismiss pursuant to Rule 12(b)(6). To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* When ruling on a Rule (12)(b)(6) motion, a court must accept the factual allegations set forth in the complaint as true and "draw all reasonable inferences in [plaintiff's] favor." *See, e.g.*, *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

Defendant argues that each of Plaintiff's basis is precluded by the clear language of the policy. These provisions — Business Income, Extra Expense, or Business Income from Dependent Properties — apply where suspension of the insured's business operations is due to "direct physical loss of or direct physical damage to property."

The Second Circuit recently ruled on the issues presented here in *10012 Holdings, Inc. v. Sentinel Insurance Company, Ltd*., 21 F.4th 216 (2d. Cir. 2021). In *Sentinel Insurance*, the plaintiff, 10012 Holdings, operated an art gallery that was forced to close its operation to the public and pivot to online sales of its artwork with limited in-person operations. 21 F.4th at 218. 10012 Holdings "sought coverage under [its insurance p]olicy for its business income losses and expenses relating to the gallery's closure." *Id.* at 218. Sentinel denied coverage because 10012 Holdings suffered no physical damage. 10012 Holdings then brought suit "claiming that the Policy's references to 'physical damage' or 'physical loss' include the loss of use of property as a result of the suspension of operations." The District Court granted Sentinel's motion to dismiss.

The Circuit affirmed the District Court's ruling, noting that "10012 Holdings alleges only that it lost access to its property as a result of COVID-19 and the governmental shutdown orders, and not that it suspended operations because of physical damage to its property."

Interpreting New York law, the Circuit held that "under New York law the terms 'direct physical loss and physical damage in the Business Income and Extra Expense provisions do not extend to mere loss of use of a premises, where there has been no physical damage to such premises; those terms instead require actual physical loss of or damage to the insured's property."

The provisions at issue in *Sentinel Insurance* are identical to those at issue in this case. Specifically, all provisions before this Court require that the loss being claimed by the insured "direct physical loss or direct physical damage to property." Plaintiff argues that "direct physical loss" should be interpreted as loss of use. When contemplating this language in *Sentinel Insurance*, the Circuit ruled:

> We therefore hold, in accord with *Roundabout Theatre Co.* [*v. Cont'l Cas. Co.,* 751 N.Y.S.2d 4, 8 (1st Dep't 2002)] and every New York state court to have decided the issue, that under New York law the terms "direct physical loss" and "physical damage" in the Business Income and Extra Expense provisions do not extend to mere loss of use of a premises, where there has been no physical damage to such premises; those terms instead require actual physical loss of or damage to the insured's property. We therefore reject 10012 Holdings' argument that "physical loss" must mean "loss of physical possession and/or direct physical deprivation" — in other words, loss of use.

*Sentinel Insurance*, 21 F.4th at 222 (2d Cir. 2021). When contemplating the Civil Authority provision in *Sentinel Insurance*, a provision identical to the one at issue here, the Circuit again affirmed the District Court:

> [T]he executive orders issued by the Governor — resulted from a risk of direct physical loss to property in the vicinity of the gallery. But the executive orders were the result of the COVID-19 pandemic and the harm it posed to human beings, not, as "risk of direct physical loss" entails, risk of physical damage to property. . . . [E]ven assuming that COVID-19 itself posed a "risk of direct physical loss," coverage under the Civil Authority provision contemplates that the executive orders prohibiting access to the insured's premises were prompted by risk of harm to neighboring premises. As the District Court observed, however, "the Complaint does not plausibly allege that the potential presence of COVID-19 in neighboring properties directly resulted in the closure

> of Plaintiff's propert[y]; rather, it alleges that closure was the direct result of the risk of COVID-19 at Plaintiff's property."

*Id.* at 223 (quoting *10012 Holdings, Inc. v. Sentinel Ins. Co.*, 507 F. Supp. 3d 482, 488–89 (S.D.N.Y. 2020)). Like 10012 Holdings, Plaintiff seeks coverage for business losses associated with government mandate closures as a result of the COVID-19 pandemic. But Plaintiff does not allege the presence of COVID-19 in its office or the vicinity of its offices directly led to the closure of its property.

Plaintiff's claims rests solely on the notion that physical loss should be interpreted as loss of use. This reading of the policy provisions at issue runs contrary to New York law. Accordingly, Defendant's motion to dismiss is **GRANTED**. The Clerk of the Court is respectfully directed to terminate ECF No. 28 and close this case.

**SO ORDERED.**

Dated: March 29, 2022
New York, New York

**ANDREW L. CARTER, JR.**
**United States District Judge**